# EXHIBIT 3



FILED IN THE DISTRICT COURT
MAYES CO. OKLAHOMA
AUG 25 2017
RITA HARRISON, COURT CLERK
BY_____ DEPUTY

IN THE DISTRICT COUT IN AND FOR MAYES COUNTY
STATE OF OKLAHOMA

MICHAEL T. TORRONE, JR., )
)
　　Plaintiff, )
)
v. ) Case No. CJ-17-153
)
SAFECO INSURANCE COMPANY ) **JURY TRIAL DEMANDED**
OF AMERICA, a Washington corporation, )
) **ATTORNEY'S LIEN CLAIMED**
　　Defendant. )

## PETITION

COMES NOW, the Plaintiff, Michael T. Torrone, Jr. ("Plaintiff"), by and through his undersigned attorneys, the law firm of Logan & Lowry, LLP, and for his Petition and claims for relief against Defendant, Safeco Insurance Company of America, a Washington corporation ("Defendant"), alleges and states as follows:

### I.　JURISDICTION

1.　Plaintiff was at all relevant times insured by Defendant per the Oklahoma Personal Auto Policy, No. Y7479424 ("Policy").

2.　Upon information and belief, Defendant is a Washington corporation authorized to conduct business in Oklahoma.

3.　Plaintiff resides in Mayes County, Oklahoma, and the causes of action arose therein, thus this Court has jurisdiction and venue is proper pursuant to Okla. Stat. tit. 12, § 137.

### II.　BACKGROUND

4.　On or about July 14, 2016, Plaintiff's 2013 Dodge Ram 1500 pick-up truck ("Vehicle") was in a single-vehicle collision when tornadic winds and heavy rainfall forced the

Vehicle to shift on the roadway, spin, and collide with the concrete median separating eastbound and westbound traffic on Interstate 44 in Oklahoma.

5. The collision resulted in extensive damage to the Vehicle, including a damaged/bent frame, and rendered the Vehicle inoperable.

6. Plaintiff and Defendant are parties to a contract where Defendant was to provide, and Plaintiff was to pay for, an Oklahoma Personal Auto Policy covering, among other things, loss to the Vehicle ("Policy").

7. All premiums owed under the Policy at the time of loss were paid and the Policy was effective when the collision occurred.

8. Plaintiff timely notified Defendant of the loss, including a description of the property involved, and took reasonable steps to protect the Vehicle from further damage as directed by Defendant. Plaintiff further informed Defendant of the significant burden placed on him and his sheep and cattle business resulting from the Vehicle damage and the same being rendered inoperable. Plaintiff informed Defendant of impending business operations that would require renting a Vehicle capable of performing ranching activities while the Vehicle remained inoperable.

9. Immediately following the collision, Plaintiff had the truck transported from Stroud, Oklahoma, to Larry's Body Work 2.0, LLC ("Larry's") in Vinita, Oklahoma.

10. Upon initial inspection, Larry's informed Plaintiff that the Vehicle's frame "horns" were bent, and Plaintiff understood from Larry's that frame horns can be soldered off the frame and new frame horns welded to the frame assembly.

11. Plaintiff informed Larry's that, as a result of the collision, the steering wheel was extremely loose, moved without any resistance, and was turned left when the wheels were

straight. Additionally, the "no-traction" warning was displayed and the front passenger door would not properly open because the entire front end was twisted to the right.

12. On or about July 15, 2016, Larry's informed Plaintiff of its damage estimate, which included estimated repair costs to be in excess of $9,119.50 ("Larry's Estimate"). Larry's Estimate did not include services associated with soldering off the bent frame horns as initially stated. Rather, Larry's Estimate contemplated subletting the frame work. Upon inquiry, Larry's explained the frame work would consist of bending the frame back into alignment. Larry's estimate also failed to address any issues with the steering wheel or column or the "no-traction" warning.

13. During a telephone conversation between Larry's and Plaintiff regarding Larry's Estimate, Plaintiff understood that Larry's considered the estimated damages and repair costs to equal approximately "60% of Vehicle value," but Larry's anticipated supplemental repairs above the repairs identified in Larry's Estimate.

14. On or about July 26, 2016, Defendant engaged an independent adjuster, Joseph Their ("Defendant's Adjuster"), to assess the damage to the Vehicle.

15. Defendant's Adjuster created a damage report dated July 27, 2016 ("Defendant's Report"), that considered using salvage parts that are not acceptable under the policy and, per Larry's, were not in a proper/adequate condition to be installed. Defendant's Report failed to address issues with the steering wheel or column, the "no-traction" warning, or an alignment ("Defendant's Report"). Defendant's Report estimated the total cost of repairs at $7,642.20, $1,477.30 less than Larry's Estimate. Defendant's Report is attached hereto as **Exhibit A**.

16. Defendant's Report also concluded that the "[t]**otal loss threshold reached**" relative to the Vehicle damage. *See* **Exhibit A** at p. 11 (p. 2 of "Claim Summary").

17. Subsequent to furnishing Plaintiff with Defendant's Report, Defendant's agent, Malcolm King ("Defendant's Agent"), contacted Plaintiff and informed him that the Vehicle would not be considered a total loss. During a conversation with Plaintiff, Mr. King discussed total loss threshold percentages and values being different from state, but indicated he did not know what percentage was required to reach the Oklahoma total loss threshold.

18. Plaintiff requested an explanation considering the significant damage to the Vehicle, including the frame, Larry's approximation that the repairs equated to 60% of value, and Defendant's Adjuster findings that the total loss threshold had been reached.

19. Plaintiff also notified Defendant's Agent that Okla. Stat. tit. 47, § 1111 obligates Defendant and Plaintiff to follow certain procedures upon the total loss threshold being reached. Specifically, Okla. Stat. tit. 47, § 1111 (C)(1) states:

> If an insurance company pays a claim for a loss which is less than a total loss but the cost of repairing the vehicle for safe operation on the highway exceeds sixty percent (60%) of the fair market value of the vehicle . . . any holder of the certificate of title for the vehicle shall return the certificate of title to the Tax Commission or a motor license agent within thirty (30) days from receipt of payment for the loss.

20. In an attempt to "explain" the findings of Defendant's Adjuster and the express written statement in Defendant's Report – "[t]otal loss threshold reached," Defendant's Agent asserted that the statement was **printed on every report by default**. Upon information and belief, "[t]otal loss threshold reached" is not printed on every report by default and Defendant knowingly and intentionally mispresented the same to be true in an effort to deceive the Plaintiff.

21. Defendant's Agent also informed Plaintiff that an evaluation was made on the Vehicle's market value in a further attempt to justify Defendant's decision not to declare the Vehicle totaled. However, Defendant's Agent subsequently sent an email to Plaintiff on August

10, 2016, presumably trying to offer "supporting" evaluation documents, but this email correspondence clearly evinces that a formal evaluation had not yet been conducted.

22. Defendant continued its behavior of refusing to acknowledge that the total loss threshold had been reached relative to the Vehicle, and issued a check to Plaintiff dated August 25, 2016, in the amount of $7,142.20 (the amount listed in Defendant's Report).

23. Plaintiff declined to accept, sign, or otherwise negotiate the check as the same represented Defendant's attempts to escape its legal obligations arising under the Policy and Oklahoma law.

24. As a result of Defendant's conduct, Plaintiff was forced to rent a vehicle suitable for conducting ranch operations and incurred rental charges in the amount of $1,086.86.

25. Plaintiff also incurred storage fees of $630.00 associated with the Vehicle being kept at Larry's and additional fees of $192.00 for towing the Vehicle immediately after the collision to Larry's and then from Larry's to Plaintiff's ranch.

26. On or about September 2, 2016, Plaintiff was forced to purchase a vehicle to enable him to continue operating his ranch business as his Vehicle remained inoperable. Plaintiff purchased a 2002 RAM 3500 ("Cover Vehicle") for the total purchase price of $10,454.00 and also incurred fees of $316.50 for title, tax, registration, and related charges. As of the date of filing this Petition, Plaintiff has made eleven (11) payments of $311.25 per month, or $3,423.75 total, for the Cover Vehicle.

27. Upon Plaintiff contacting his insurance agent to procure insurance for the Cover Vehicle, he learned that Defendant erroneously reporting the collision as an "at-fault" accident. The collision was unquestionably caused by an act of god, i.e., tornadic storm. As a result, Plaintiff was forced to pay an exorbitantly higher amount for auto insurance than he would have

if Defendant had correctly reported the cause of the collision (nearly $1,000 more per year or $83.29 per month). As of the date of filing this Petition, Plaintiff has paid a total of $916.19 in excessive insurance premiums. Plaintiff will continue to be damaged when procuring vehicle insurance so long as the reason for the collision remains falsely reported.

28. Defendant's improper conduct and refusal to comply with its obligations under the Policy has resulted in Plaintiff's inability to exercise its rights under a certain IAS GAP insurance policy ("GAP Policy") procured when Plaintiff purchased the Vehicle. As a result, Plaintiff has paid a total of $6,841.76 in unnecessary payments on the Vehicle from August, 2016 through August, 2017 (with payments continuing to come due on a monthly basis). Further, under Plaintiff's GAP Policy, IAS or other appropriate payor would have satisfied the difference between the salvage value of the Vehicle and the amount owed to Plaintiff's lender upon the Vehicle being totaled. As of the filing date hereof, the current payoff balance on the Vehicle is $21,358.60.

29. By letter dated November 11, 2016, Plaintiff again urged Defendant to comply with its legal and contractual obligations owed to Plaintiff under the Policy requesting recovery for its other legal damages, but Defendant declined to comply. Rather, another agent of the Defendant changed the position offered by Defendant's Agent regarding "total loss threshold reached" being printed on every report by default when stating that such phrase is merely an internal/company statement and not meant to have any legal meaning regarding the total loss threshold.

30. In June, 2017, Plaintiff engaged a highly reputable and qualified vehicle repair business in northeast Oklahoma to perform a damage assessment on the Vehicle. The estimate

shows initial estimated repair costs as $14,966.94. In the estimate, the frame assembly is to be replaced not repaired.

31.   Defendant has refused to acknowledge that the Vehicle is a total loss and has not complied with its obligations owed to Plaintiff under the law and the Policy.

32.   Due to Defendant's continued failure to comply with the terms of the Policy, Plaintiff's damages continue to accrue.

### III.   CLAIMS FOR RELIEF

#### Count I: Breach of Contract

33.   Plaintiff incorporates the allegations contained in Paragraphs 1 through 23 above as if set forth in Count I in full.

34.   Defendant is contractually obligated under the Policy to declare the Vehicle a total loss and compensate Plaintiff for such loss.

35.   Defendant has breached its contract with Plaintiff because it refused to declare the Vehicle a total loss and has not compensated Plaintiff for such loss.

36.   As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered harm for which he is entitled to recover damages in the amount of $11,498.20 for cost of the Cover Vehicle, excess insurance premiums, unnecessary payments due under the current Vehicle note, plus the appropriate salvage value of the Vehicle, the difference between the salvage value and the payoff balance of the Vehicle as of the date of filing hereof, prejudgment and post-judgment interest, attorney's fees, costs incurred, any and all other damages permissibly recovered under the law governing breach of contract, and additional damages accruing by virtue of Defendant's continued refusal to abide by the terms of the Policy and Oklahoma law.

## Count II: Bad Faith

37. Plaintiff incorporates the allegations contained in Paragraphs 1 through 27 as if set forth in Count II in full.

38. Defendant is contractually obligated under the Policy to declare the Vehicle a total loss and compensate Plaintiff for such loss.

39. Defendant's refusal to declare the Vehicle a total loss and compensate Plaintiff for such loss was unreasonable under the circumstances because: (i) Defendant's Adjuster determined the total loss threshold to be reached; the damage to the Vehicle exceeded the total loss threshold under Oklahoma law; (ii) Defendant's Report considers using salvage parts that are not acceptable under the policy, it did not address issues with the steering wheel or column, the "no-traction" warning, an alignment, and failed to properly call for the replacement of the frame assembly; and (iii) Defendant failed to adequately investigate the cause of the accident.

40. Moreover, Defendant improperly reported the collision as an "at-fault" accident when the collision was actually caused by an uncontrollable act of god.

41. Further, during the claim process, Defendant intentionally made false assertions attempting to justify its refusal to fully compensate Plaintiff for his loss. Such assertions include, without limitation, Defendant's agent stating to Plaintiff that an evaluation was performed to determine the Vehicle's fair market value when no formal evaluation was conducted, Defendant's agent erroneously stating that "[t]otal loss threshold reached" is printed by default on every damage report, and subsequently changing that position upon Plaintiff reasserting Defendant's obligations under Oklahoma regarding total loss threshold.

42. Defendant's conduct was unreasonable under the circumstances, as well as fraudulent, oppressive, outrageous, vexatious, reckless, indifferent to the rights of others, willful, wanton, and/or made for a dishonest purpose.

43. Defendant thereby intentionally and maliciously violated its duty of good faith and fair dealing with Plaintiff.

44. As a direct and proximate result of Defendant's breach of its duty of good faith and fair dealing, Plaintiff has suffered harm, including mental anguish, and incurred costs and attorney's fees for which he is entitled to recover damages, including punitive damages, in excess of $10,000.00.

### Count III: Fraud and Misrepresentation

45. Plaintiff incorporates the allegations contained in Paragraphs 1 through 44 as if set forth in Count III in full.

46. As set forth above, in an attempt to deceive Plaintiff, Defendant knowingly and intentionally or recklessly misrepresented that Plaintiff's vehicle had not reached the "[total loss threshold" and/or that "[t]otal loss threshold reached" is printed on every report by default.

47. Defendant deceptive actions constitute fraud and/or constructive fraud and resulted in Plaintiff suffering harm for which he is entitled to recover damages, along with punitive damages, in excess of $10,000.00.

### Count IV: Tortious Interference with Contract

48. Plaintiff incorporates the allegations contained in Paragraphs 1 through 47 as if set forth in Count IV in full.

49. Defendant's actions constitute tortuous interference with Plaintiff's existing and contractual business relations under Oklahoma law, with respect to Plaintiff's GAP Policy, as set forth above.

50. Plaintiff informed Defendant of such contractual relationship regarding the GAP Policy, and Defendant's interference with such contractual relationship is not justified.

51. Defendant's tortious interference with Plaintiff's contractual relationship with respect to the GAP Policy resulted in Plaintiff suffering harm for which he is entitled to recover damages, along with punitive damages, in excess of $10,000.00.

## IV.   REQUESTS FOR RELIEF

WHEREFORE, Plaintiff prays the following relief be granted:

i) Judgment against Defendant for breach of contract in the amount of $11,498.20 for cost of the Cover Vehicle, excess insurance premiums, unnecessary payments due under the current Vehicle note, plus the appropriate salvage value of the Vehicle, the difference between the salvage value and the payoff balance of the Vehicle as of the date of filing hereof, prejudgment and post-judgment interest, attorney's fees, costs incurred, any and all other damages permissibly recovered under the law governing breach of contract, and additional damages accruing by virtue of Defendant's continued refusal to abide by the terms of the Policy and Oklahoma law;

ii) Judgment against Defendant for compensatory, punitive, and any other damages allowed by law in excess of $10,000.00 for violating its duty of good faith and fair dealing and for fraud and misrepresentation;

iii) Judgment against Defendant for tortious interference with contract in the amount to be determined at trial, to date, Plaintiff has made $6,841.76 in unnecessary payments on the

Vehicle from August, 2016 through August, 2017 (with payments continuing to come due on a monthly basis); and

iv) Prejudgment and post-judgment interest as provided by law; for an award of all reasonable attorney's fees and costs incurred herein; and for any and all such other relief as this Court deems appropriate in the interest of justice.

Dated this 23rd day of August, 2017.

        Respectfully submitted,

        LOGAN & LOWRY, LLP
        101 South Wilson Street
        P. O. Box 558
        Vinita, OK 74301
        (918) 256-7511
        (918) 256-3187 (*Fax*)
        rolsen@loganlowry.com

        Attorneys for Plaintiff, Michael T. Torrone, Jr.

By: _____
      Ryan H. Olsen, OBA #31177